**BECK LAW OFFICES**
LAWRENCE R. BECK
<u>Mailing</u>:  P.O. Box 1390
<u>Physical</u>:  8884 N. Government Way, Ste. "D"
Hayden Lake, Idaho 83835-1390
Phone: (208) 772-4400
Facsimile: (208) 772-7243
Attorney for Plaintiff
ISBA No.: 3751

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS BAYSINGER AND  LEIGHANN BAYSINGER, husband and wife, and LEIGHANN BAYSINGER, natural parent, guardian and heir of WILLIAM D. MCCARTHY, deceased;<br><br>     Plaintiffs,<br><br>     vs.<br><br>KOOTENAI COUNTY, IDAHO, a municipal corporation and political subdivision of the State of Idaho; KOOTENAI HOSPITAL DISTRTICT, d/b/a KOOTENAI MEDICAL CENTER, a state licensed hospital and political subdivision of the State of Idaho, d/b/a/ KOOTENAI HEALTH, KOOTENAI HEALTH FOUNDATION, INC., KOOTENAI MEMORIAL HOSPITAL FOUNDATION, INC., and KOOTENAI HEALTH NETWORK, INC.; and NICOLE L. CARLBERG, D.O.; and JAMES V. KIRBY, M.D., in both their official and individual capacities.; and JOHN DOE AND JANE DOES 1 THROUGH 20, in their individual and official capacities.<br><br>     Defendants. | CASE No.<br><br><br>**COMPLAINT FOR DAMAGES** |

COMPLAINT: 1

COME NOW, the above-named PLAINTIFFS, DENNIS BAYSINGER and LEIGHANN

BAYSINGER, husband and wife, and LEIGHANN BAYSINGER, natural parent, guardian and heir of

WILLIAM D. MCCARTHY, deceased, by and through their attorney of record, Larry Beck, of Beck

Law Offices, Hayden, Idaho, and hereby complain and allege as follows:

## IDENTITY OF THE PARTIES, JURISDICTION AND VENUE

1.      At all material times hereto, PLAINTIFFS DENNIS BAYSINGER and

LEIGHANN BAYSINGER were, and presently are, husband and wife and residents of Kootenai

County, State of Idaho. PLAINTIFF LEIGHANN BAYSINGER is the natural mother of

WILLIAM D. MCCARTHY, deceased, (hereafter referred to as "WILLIAM"). PLAINTIFF

DENNIS BAYSINGER, at all time material hereto, was, and is, WILLIAM'S step-father.

2.      DEFENDANT KOOTENAI COUNTY, IDAHO, (hereafter referred to as

"DEFENDANT KOOTENAI", and collectively with the other defendants as "ALL

DEFENDANTS"), is a municipal corporation, political subdivision, and body politic of the State

of Idaho. Among its powers is the power to sue and to be sued. That DEFENDANT

KOOTENAI, on information and belief, had the statutory power pursuant to Idaho Code

§§ 31-3601 - 3620, to create, and did create, a county hospital board that has, pursuant to

§31-3610, the responsibility to adopt rules and regulations for the general operation of the county

hospital, subject to final approval of DEFENDANT KOOTENAI.

3.      DEFENDANTS KOOTENAI HOSPITAL DISTRICT, d/b/a/ KOOTENAI

MEDICAL CENTER, is a hospital district located in Kootenai County, Idaho. DEFENDANT

KOOTENAI HOSPITAL DISTRICT, d/b/a KOOTENAI HEALTH, KOOTENAI HEALTH

FOUNDATION, INC., KOOTENAI MEMORIAL HOSPITAL FOUNDATION, INC., and

KOOTENAI HEALTH NETWORK, INC., operates a county hospital complex in Kootenai

COMPLAINT: 2

County that is commonly known as Kootenai Medical Center. (These named Defendants, including DEFENDANT KOOTENAI HOSPITAL DISTRICT, are hereafter referred to as "DEFENDANT HOSPITAL", and collectively with the other defendants as "ALL DEFENDANTS"). On information and belief, DEFENDANT KOOTENAI HOSPITAL DISTRICT was created pursuant to Idaho Code §§39-1318 – 1331, and has among its powers enumerated in §39-1331, the power to sue and to be sued, and to manage, control and supervise the business affairs of the district, and to hire and retain agents and employees.

4.     At all material times hereto, and upon information and belief, DEFENDANT NICOLE L. CARLBERG, D.O. (hereafter referred to as "DEFENDANT CARLBERG", and collectively with the other defendants as "ALL DEFENDANTS"), was, and presently is, a physician licensed in the State of Idaho, and an employee of DEFENDANT HOSPITAL. On information and belief, DEFENDANT CARLBERG is a resident of Kootenai County, Idaho.

5.     At all material times hereto, and upon information and belief, DEFENDANT JAMES V. KIRBY, M.D. (hereafter "DEFENDANT KIRBY" and collectively with the other defendants as "ALL DEFENDANTS"), was, and presently is, a physician licensed in the State of Idaho, and an employee of DEFENDANT HOSPITAL. On information and belief, DEFENDANT KIRBY is a resident of Kootenai County, Idaho.

6.     At all times material hereto, Defendants JOHN AND JANES DOE 1-20, were supervisors, employees or agents of DEFENDANT KOOTENAI and/or DEFENDANT HOSPITAL, whose true names, identities and capacities are unknown at this time. Said defendants, (hereafter referred to as "DEFENDANT DOES" and collectively with the other defendants as "ALL DEFENDANTS"), did, on information and belief, participate in or directed the deprivation of PLAINTIFFS, and WILLIAM'S, constitutional rights, and in so doing, bear

COMPLAINT: 3

individual liability under 42 U.S.C. §1983. DEFENDANT DOES, on information and belief, also committed medical negligence under state law. Plaintiffs will seek the true identities of said defendants through initial discovery in this matter, and will then seek leave of Court to amend this Complaint with the true identities for DEFENDANT DOES.

7.      That Plaintiffs allege claims against ALL DEFENDANTS under 42 U.S.C. S1983 for deprivation of WILLIAM'S rights to safe conditions of confinement, adequate medical care, and life, which are secured by the Fourteenth Amendment to the U.S. Constitution.  Plaintiffs also allege a §1983 claim for deprivation of their liberty interest in their companionship, society and relationship with their adult child, which is also protected by the Fourteenth Amendment.

8.      That Plaintiffs also bring state law claims for wrongful death damages caused by the medical negligence of ALL DEFENDANTS, as well as by negligent hiring, retention, supervision and training.  Plaintiffs timely filed and served a Notice of Tort Claim on DEFENDANT KOOTENAI and DEFENDANT HOSPITAL, in compliance with Idaho Code §6-906. Plaintiffs further exhausted all jurisdictional prerequisites set forth in Idaho Code §§6-1001 - 1013.

9.      That Plaintiffs claim damages herein in excess of the minimum jurisdictional amounts necessary to file a civil complaint in the United States District Court for the District of Idaho.

10.      That the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1343 (a) (3), and supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. §1367.

11.      That all of the wrongful actions and/or omissions which Plaintiffs allege were committed by ALL DEFENDANTS, and each of them, occurred in the City of Coeur d'Alene,

County of Kootenai, State of Idaho. Venue for this action is therefore proper in this district

pursuant to 28 U.S.C. §1391 (b) and (c).

## GENERAL ALLEGATIONS

12.     In the early morning on Saturday, September 11, 2011, WILLIAM was admitted

to DEFENDANT HOSPITAL because of an attempted suicide. WILLIAM was discharged from

DEFENDANT HOSPITAL the next day.

13.     On October 30, 2011, WILLIAM was again admitted to DEFENDANT

HOSPITAL because of a suicide attempt. WILLIAM made statements to the DEFENDANT

HOSPITAL's staff about wanting to hang himself.

14.     WILLIAM was admitted to DEFENDANT HOSPITAL with a plan to remain on

hold because he was a danger to himself.  DEFENDANT HOSPITAL believed that WILLIAM

should be maintained in the IPU level of the hospital because of his condition.

15.     WILLIAM was discharged just four days later on November 3, 2011; his

prognosis at the time of discharge was guarded, as ALL DEFENDANTS believed WILLIAM

was prone to impulsivity.

16.     On November 22, 2011, WILLIAM was once again admitted to DEFENDANT

HOSPITAL due to yet another suicide attempt. This was his third and final admission to

DEFENDANT HOSPITAL.

17.     On November 24, 2011, WILLIAM told DEFENDANT HOSPITAL's staff that

he often acted impulsively when he was angry, and that he felt hopeless, irritable and sad. He

told the staff that he just wanted to die.

COMPLAINT: 5

18.    DEFENDANT HOSPITAL's staff was aware that WILLIAM had intermittent auditory hallucinations, and heard voices that told him to kill himself. The progress note taken on that day recorded that [WILLIAM] "hears voices today."

19.    On November 28, 2011, WILLIAM was placed on a "Physicians Hold". DEFENDANT CARLBERG, one of WILLIAM'S treating physicians at DEFENDANT HOSPITAL, noted her concerns that WILLIAM should not be released at that time because his continued liberty would pose an imminent risk to himself...as evidenced by a threat of substantial physical harm. She further noted that WILLIAM "had two suicide attempts in the last one month, had poor insight into his mental health issues and remained at risk to himself."

20.    On November 29, 2011, Rebecca Cady, a designated examiner, agreed with DEFENDANT CARLBERG'S November 28, 2011 assessment, and found that WILLIAM "was mentally ill, that he was likely to injure himself, and that he lacked the capacity to make informed decisions regarding his treatment."

21.    On November 29, 2011, DEFENDANT KIRBY, another of WILLIAM'S treating physicians at DEFENDANT HOSPITAL, also agreed with DEFENDANT CARLBERG'S November 28, 2011 assessment, and found that WILLIAM "was mentally ill, that he was likely to injure himself, and that he lacked the capacity to make informed decisions regarding his treatment." This was in marked contrast to DEFENDANT KIRBY'S prior assessment, dated just a few weeks earlier on November 3, 2011, wherein he noted that WILLIAM was not likely to injure himself, and that WILLIAM did have the capacity to make informed decisions about his treatment. However, as early as November 1, 2011, Designated Examiner Rebecca Cady noted that WILLIAM "was mentally ill, was likely to injure himself, and that he lacked the capacity to make informed decisions regarding his treatment."

COMPLAINT: 6

22.    On November 30, 2011 DEFENDANT CARLBERG noted that WILLIAM shouldn't be discharged home because there was a strong likelihood that he would try to commit suicide again.

23.    On December 1, 2011, DEFENDANT KIRBY noted that there was still a significant risk of suicidal behavior for WILLIAM and that it was not safe to discharge him at that time. He therefore recommended that WILLIAM continue to be hospitalized on an involuntary basis.

24.    On December 5, 2011, in spite of WILLIAM's poor insight, poor judgment and impulsivity, DEFENDANT CARLBERG ordered observation levels changed to "level 2B", which was a less restrictive observation level.

25.    On December 6, 2011, WILLIAM learned that he was going to be transferred to State Hospital North, a state run mental hospital to which he had just been involuntarily committed.  WILLIAM was noted to have displayed significant amounts of anxiety after learning of the impending transfer. Later that same day, DEFENDANT HOSPITAL's staff noted that WILLIAM was having thoughts of engaging in self-harm - in the form of self-injury.  However, WILLIAM'S observation levels had still not been changed by any of the Defendants, and he had not been placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

26.    On December 7, 2011, DEFENDANT HOSPITAL's staff noted that WILLIAM was struggling with anxiety, and that medication was having only a limited affect. WILLIAM'S observation levels still had not been changed by any of the Defendants, and he had not been placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

COMPLAINT: 7

27.     On December 8, 2011, DEFENDANT HOSPITAL's staff noted that WILLIAM remained depressed and agitated, and that he was very frustrated with not knowing when he would be transferred to State Hospital North. WILLIAM'S observation levels still had not been changed by any of the Defendants, and he had not been placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

28.     On December 9, 2011, DEFENDANT HOSPITAL's staff noted that WILLIAM was isolating, and his anxiety increased while waiting for his pending transfer to State Hospital North. WILLIAM'S observation levels still had not been changed by any of the Defendants, and he had not been placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

29.     On December 10, 2011, DEFENDANT HOSPITAL's staff noted that WILLIAM attended a morning group therapy meeting, but refused to identify a goal for himself, and stated "I don't care." WILLIAM was noted to appear anxious, restless, and his affect was blunted. Later that day, he was noted to be isolating in his room, and presented with poor eye contact. Still later that day, WILLIAM refused to attend group meetings and remained in bed. However, WILLIAM'S observation levels still had not been changed by any of the Defendants, and he had not been placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

30.     Later in the day on December 10, 2011, WILLIAM pleaded with DEFENDANT KIRBY to give him medication that would hopefully provide immediate relief for his increased agitation and anxiety. Instead, DEFENDANT KIRBY did a "walk and talk" up and down the hallway for a few minutes with WILLIAM, and then DEFENDANT KIRBY left. WILLIAM'S observation levels still had not been changed by any of the Defendants, and he had not been

placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

31.     Late in the evening on December 10, 2011, the night before WILLIAM thought he was going to be transferred to State Hospital North, DEFENDANT HOSPITAL'S staff noted that WILLIAM "had a very difficult day, and that his emotions were extremely labile." They noted that WILLIAM "was more irritable, frustrated, was pushing limits, testing boundaries and being extremely intrusive." Staff noted that WILLIAM's behavior "had declined so rapidly" and "explored with WILLIAM as to what he could do to change that." A staff member noted that WILLIAM "continued throughout the evening to push limits and test boundaries" and that WILLIAM "had become superficial, flippant and rude." However, WILLIAM's observation levels still had not been changed by any of the Defendants, and he had not been placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

32.     On December 11, 2011, the day WILLIAM thought he was to be transferred to the State Hospital North, DEFENDANT HOSPITAL's staff noted that WILLIAM was displaying a flat affect, blunted, and had slow responses to questions. Staff further noted that WILLIAM had stopped attending groups, and was sullen and superficial. They noted that WILLIAM remained anxious and irritable. It was noted that WILLIAM did not attend his morning committee meeting or medical education meeting. It was noted that during the mid-morning group meeting, WILLIAM had remained in his room in bed. He came into the group meeting late, and left when the discussion period of the meeting began. Staff noted that WILLIAM apparently went back to his room. WILLIAM's observation levels still had not been

changed by any of the Defendants, and he had not been placed on suicide watch. Further, ALL DEFENDANTS provided WILLIAM with access to his regular clothing, which included his belt.

33.    Later that morning, when a nurse was making rounds for observation checks, WILLIAM was found hanging by his belt that had been suspended from the bathroom doorway. CPR was attempted and WILLIAM was transferred to ICU for stabilization. DEFENDANT HOSPITAL's staff noted that "…Length of time that he was hanging was unclear but may have been as long as 30 to 45 minutes."

34.    On December 11, 2011, at 1:12 p.m., WILLIAM was pronounced dead.

## FIRST CAUSE OF ACTION – VIOLATION OF SUBSTANTIVE DUE PROCESS - 42 U.S.C. § 1983

35.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if set forth herein.

36.    On information and belief, DEFENDANT KOOTENAI created a county hospital board by resolution and ordinance duly passed by the Kootenai County Board of Commissioners, pursuant to the authority granted to DEFENDANT KOOTENAI by Idaho Code §§31-3601–3620. Idaho Code § 31-3610 provides that a board of county commissioners that has created a county hospital board, must approve all rules and regulations for the conduct and operation of the county hospital as recommended to it by the county hospital board.

37.    On further information and belief, sometime after DEFENDANT KOOTENAI created the county hospital board, DEFENDANT KOOTENAI HOSPITAL DISTRICT was created pursuant to Idaho Code Title 39, Chapter 13. Because both sections of the Idaho Code that allow for the creation of a county hospital board, and a county hospital district, remain in effect, it is presently unknown to Plaintiffs as to whether DEFENDANT KOOTENAI HOSPITAL DISTRICT now has complete responsibility for the negligent actions and/or

COMPLAINT: 10

omissions of DEFENDANT HOSPITAL, or whether DEFENDANT KOOTENAI still retains operational responsibility pursuant to Idaho Code §31-3610. Accordingly, both DEFENDANTS KOOTENAI and KOOTENAI HOSPITAL DISTRICT have been named herein, and if it can be established that DEFENDANT KOOTENAI no longer has operational responsibility for the negligent actions and/or omissions of DEFENDANT HOSPITAL, then Plaintiffs will immediately thereafter dismiss DEFENDANT KOOTENAI from this litigation.

38.   At all times material hereto, WILLIAM had a constitutionally protected liberty interest under the Fourteenth Amendment to the U.S. Constitution, which guaranteed his safety and well being while held involuntarily by DEFENDANT KOOTENAI and DEFENDANT HOSPITAL.

39.   At all times material hereto, ALL DEFENDANTS, and each of them, had a duty to exercise professional judgment to provide WILLIAM with safe medical care.

40.   At all times material hereto, ALL DEFENDANTS, and each of them, in the face of known threats to WILLIAM'S safety, acted with conscious indifference towards protecting WILLIAM from said threats.

41.   At all times material hereto, ALL DEFENDANTS, and each of them, in the face of known threats to WILLIAM'S safety, had a duty to take adequate steps in accordance with professional standards to prevent harm from occurring to WILLIAM.

42.   At all times material hereto, ALL DEFENDANTS, and each of them, breached said duties by:

    a.   Failing to properly assess and reassess WILLIAM for suicide;

    b.   Failing to increase the frequency of safety observations, given WILLIAM's clinical status which warranted closer observation in order to protect him from self-harm;

c.   Failing to review and modify prior written doctor's orders regarding observation levels or following proper chain-of-command policies when a patient's safety is at risk because of inadequate suicide observation orders;

d.   Failing to place WILLIAM in a safe environment of care;

e.   Failing to provide complete caregiver communication;

f.   Failing to protect WILLIAM by permitting a suicidal patient to have means of hanging (a belt), access to a hidden area, and sufficient opportunity in which to commit suicide;

g.   Failing to properly monitor WILLIAM;

h.   Failing to properly treat, diagnose, monitor and supervise the care and treatment of WILLIAM.

i.   Failing to properly conduct a thorough psychiatric evaluation and systematic suicide assessment of WILLIAM.

j.   Failing to identify specific psychiatric symptoms that may influence suicide risk.

k.   Failing to specifically inquire about suicidal thoughts, plans and behaviors.

l.   Failing to provide complete caregiver communication.

m.   Failing to properly communicate with family members about relevant suicidal facts and medical history known to them.

n.   Failing to prepare an initial treatment plan, including a safety plan, based on the findings of a comprehensive suicide evaluation.

o.   Failing to review and modify prior written doctor's orders regarding observation levels.

p.   Failing to place WILLIAM on an adequate and safe level of suicide precautions.

q.   Failing to attend to WILLIAM's patient safety.

r.   Failing to reassess safety and suicide risk because of the waxing and waning nature of suicidality.

s.   Failing to document suicide risk assessment, record of decision making processes, and record of communications with other clinicians, and failing to communicate significantly and timely regarding behavioral events witnessed by nursing staff to attending physicians.

COMPLAINT: 12

t.   Failing to properly and timely consult with properly qualified physicians regarding WILLIAM's suicidal condition.

u.   Failing to place WILLIAM in a safe environment of care for suicidal patients.

v.   Failing to adhere to policies and procedures and other patient safety rules of the hospital for suicide prevention.

w.   Failing to provide proper leadership in preventing suicide.

x.   Failing to take adequate precautions to prevent WILLIAM's suicide;

y.   Failing to supervise and train nursing staff and physicians concerning how to insure safety of patients that had extreme suicidal tendencies; and,

z.   In such other ways as shall become known during the course of discovery.

43.   That the actions and omissions of ALL DEFENDANTS, and each of them, were performed with a conscious indifference to WILLIAM's constitutional rights, and with a lack of adherence to professional standards, all of which directly and proximately caused WILLIAM's suffering and wrongful death.

44.   Upon information and belief, at all times relevant hereto, DEFENDANT HOSPITAL was acting as an agent, actual or apparent, of DEFENDANT KOOTENAI. The substantial departures from reasonable professional judgment by DEFENDANT HOSPITAL, and that of its employees and agents, are thereby imputed to DEFENDANT KOOTENAI. Therefore, DEFENDANT KOOTENAI is vicariously liable for the substantial departures from reasonable professional judgment by DEFENDANT HOSPITAL and DEFENDANT HOSPITAL's employees and agents.

45.   DEFENDANT HOSPITAL also has operational responsibility and control over the operation of the hospital, its employees and agents. On information and belief, DEFENDANTS CARLBERG, KIRBY, and DOES 1-20, were, at all times material hereto,

COMPLAINT: 13

employees or agents, whether actual or apparent, of DEFENDANT HOSPITAL. Therefore, DEFENDANT HOSPITAL is vicariously liable for the substantial departures from reasonable professional judgment by DEFENDANTS CARLBERG, KIRBY, and DOES 1-20.

46.     That at all times material hereto, DEFENDANT KOOTENAI AND DEFENDANT HOSPITAL failed to have proper procedures and protocols in place to protect the safety of patients who were involuntarily held at DEFENDANT HOSPITAL. Said failure to have adequate policies and procedures was a direct and proximate cause of WILLIAM's death.

47.     That ALL DEFENDANTS, and each of them, failed to adequately train employees and agents on how to protect the safety of patients who were involuntarily held at DEFENDANT HOSPITAL. Said training was obviously necessary in order to avoid constitutional violations. The failure to train by ALL DEFENDANTS, and each of them, was due to a municipal policy of deliberate indifference towards protecting the constitutional rights of patients.

48.     That the actions and omissions of ALL DEFENDANTS, and each of them, were performed with a conscious indifference to WILLIAM's constitutional rights, and with a lack of adherence to professional standards, all of which directly and proximately caused WILLIAM's suffering and wrongful death.

49.     ALL DEFENDANTS' actions and omissions were malicious, oppressive and wanton, and were performed with reckless disregard of WILLIAM's rights. Said Defendants' actions and inactions violated WILLIAM's rights with unnecessary harshness and severity, through the misuse or abuse of authority or power, and/or by taking advantage of WILLIAM's serious medical and mental conditions and disability.

50. The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having forever lost the love, companionship, relationship, care, comfort and society with their son, WILLIAM.

51. The above described actions and/or omissions by ALL DEFENDANTS, and each of them, have resulted in Plaintiffs incurring damages as a result of their past, present and future suffering of severe mental anguish and emotional distress.

52. The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having incurred expenses for care, treatment and hospitalization incident to the injury resulting in death, as well as out-of pocket costs.

53. The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having forever lost the expected future services, protection, care and assistance of WILLIAM.

54. As a further direct and proximate result of the actions and/or omissions of ALL DEFENDANTS, and each of them, Plaintiffs have incurred funeral expenses and other out of pocket costs, and also had to retain Beck Law Offices to represent them in this matter, and have promised to pay a reasonable sum for legal services.

## SECOND CAUSE OF ACTION-PROFESSIONAL NEGLIGENCE AGAINST ALL DEFENDANTS.

55. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if set forth herein.

56. At all material times herein, ALL DEFENDANTS, and each of them, breached the standard of medical care that they owed to WILLIAM, by failing to exercise that degree of

COMPLAINT: 15

skill, care and learning ordinarily exercised and possessed by reasonably prudent physicians and health care providers in the same or similar communities and circumstances. The violations include, but are not limited to, all of the violations of care alleged in previous Paragraph No. 42, in this Complaint.

57.     Upon information and belief, at all times relevant hereto DEFENDANT HOSPITAL was acting as an agent, actual or apparent, of DEFENDANT KOOTENAI. The professional negligence of DEFENDANT HOSPITAL, and that of its employees and agents, is thereby imputed to DEFENDANT KOOTENAI. Therefore, DEFENDANT KOOTENAI is vicariously liable for the professional negligence of DEFENDANT HOSPITAL and DEFENDANT HOSPITAL's employees and agents.

58.     DEFENDANT HOSPITAL also has operational responsibility and control over the operation of the hospital, its employees and agents. On information and belief, DEFENDANTS CARLBERG AND KIRBY were, at all times material hereto, employees or agents, whether actual or apparent, of DEFENDANT HOSPITAL. Therefore, DEFENDANT HOSPITAL is vicariously liable for the professional negligence of DEFENDANTS CARLBERG, KIRBY, and DOES 1-20.

59.     The actions and/or inactions of ALL DEFENDANTS, and each of them, were a proximate and direct cause of WILLIAM'S pain, suffering and wrongful death.

60.     The actions and/or inactions of ALL DEFENDANTS were performed in a reckless, willful and wanton manner.

61.     The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having forever lost the love, companionship, relationship, care, comfort and society with their son, WILLIAM.

62.   The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having incurred expenses for care, treatment and hospitalization incident to the injury resulting in death, as well as out-of pocket costs.

63.   The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having forever lost the expected future services, protection, care and assistance of WILLIAM.

64.   The above described actions and/or omissions by ALL DEFENDANTS, and each of them, have resulted in Plaintiffs incurring damages as a result of their past, present and future suffering of severe mental anguish and emotional distress.

65.   As a further direct and proximate result of the actions and/or omissions of ALL DEFENDANTS, and each of them, Plaintiffs have also had to retain Beck Law Offices to represent them in this matter, and have promised to pay a reasonable sum for legal services.

## THIRD CAUSE OF ACTION – NEGLIGENT HIRING, RETENTION, SUPERVISION AND TRAINING.

66.   Plaintiff hereby incorporates by reference, as though fully set forth herein, all of the allegations contained in the above paragraphs to this Complaint.

67.   On information and belief, DEFENDANT KOOTENAI and DEFENDANT HOSPITAL knew or should have known that DEFENDANT CARLBERG and DEFENDANT KIRBY were not properly qualified and competent to manage, supervise and treat patients with severe suicidal tendencies. DEFENDANT KOOTENAI and DEFENDANT HOSPITAL owed a duty to WILLIAM and other patients to review medical staff's prior backgrounds, qualifications and work histories, and to also not hire and retain DEFENDANTS CARLBERG and KIRBY as supervisory physicians, as well as DEFENDANT DOES 1-20, who were in charge of the care of

COMPLAINT: 17

suicidal patients. DEFENDANT KOOTENAI and DEFENDANT HOSPITAL breached these duties.

68.     DEFENDANT KOOTENAI and DEFENDANT HOSPITAL also owed a duty to WILLIAM and other patients to exercise due care in training their employees, staff and agents, including DEFENDANTS CARLBERG, KIRBY and DOES 1-20, on how to properly assess, reassess, monitor, treat, and otherwise care for suicidal patients, and particularly train them on how to keep such patients safe during their treatment. ALL DEFENDANTS breached this duty to train.

69.     DEFENDANT KOOTENAI and DEFENDANT HOSPITAL also owed a duty to WILLIAM and other patients to exercise due care in supervising their employees, staff and agents, including DEFENDANTS CARLBERG, KIRBY and DOES 1-20, on how to properly assess, reassess, monitor, treat, and otherwise care for suicidal patients, and particularly in  how to keep such patients safe during their treatment. DEFENDANT KOOTENAI and DEFENDANT HOSPITAL breached this duty to supervise.

70.     DEFENDANT KOOTENAI and DEFENDANT HOSPITAL'S breach of the above duties, and each of them, proximately and directly caused WILLIAM'S suffering and wrongful death.

71.     The actions and/or inactions of ALL DEFENDANTS were performed in a reckless, willful and wanton manner.

72.     The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having forever lost the love, companionship, relationship, care, comfort and society with their son, WILLIAM.

73.   The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having incurred expenses for care, treatment and hospitalization incident to the injury resulting in death, as well as out-of pocket costs.

74.   The above described actions and/or omissions by ALL DEFENDANTS, and each of them, resulted in Plaintiffs suffering damages as a result of having forever lost the expected future services, protection, care and assistance of WILLIAM.

75.   The above described actions and/or omissions by ALL DEFENDANTS, and each of them, have resulted in Plaintiffs incurring damages as a result of their past, present and future suffering of severe mental anguish and emotional distress.

76.   As a further direct and proximate result of the actions and/or omissions of ALL DEFENDANTS, and each of them, Plaintiffs have also had to retain Beck Law Offices to represent them in this matter, and have promised to pay a reasonable sum for legal services.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against ALL DEFENDANTS, and each of them, for all causes of action, as follows:

1.   For an award of compensatory damages sufficient to compensate Plaintiff s for their past, present and future love, companionship, relationship, care, comfort and society with their son, WILLIAM.

2.   For an award of compensatory damages sufficient to compensate Plaintiffs for incurring out of pocket costs and expenses for care, treatment and hospitalization incident to the injury resulting in WILLIAM'S death.

COMPLAINT: 19

3.      For an award of compensatory damages sufficient to compensate Plaintiffs for their damages incurred as a result of having forever lost the expected future services, protection, care and assistance of WILLIAM.

4.      For an award of compensatory damages sufficient to compensate Plaintiffs for their damages incurred as a result of their past, present and future suffering of severe mental anguish and emotional distress.

5.      For an award of damages in an amount sufficient to compensate Plaintiffs for their costs and reasonable attorney fees incurred herein.

6.      For an award of punitive damages against DEFENDANTS CARLBERG AND KIRBY, in amounts to be proven at trial but which exceed the minimum jurisdictional limits of the District Court.

7.      For such other and further relief as the Court deems just in the premises.

**A JURY TRIAL IS DEMANDED AS TO ALL ISSUES.**

DATED this 3rd day of July, 2013.

**BECK LAW OFFICES**

BY:

Lawrence R. Beck
Attorney for Plaintiffs

COMPLAINT: 20